MORRIS SHANIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BECKIE SHANIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27394, 27395. Promulgated January 12, 1953.

*Leonard Sarner, Esq.*, for the petitioners.
*Max J. Hamburger, Esq.*, for the respondent.

## OPINION.

LeMire, *Judge:* The first question presented involves the propriety of the respondent's action in increasing the income of the partnership in the amount of $18,612.88 by allocating a portion of the new securities received for old bonds of the St. Louis-San Francisco Railway Company in a nontaxable exchange to interest accrued on the old bonds subsequent to their acquisition by the partnership.

The petitioners contend that it has been definitely held in the case of *William W. Carman,* 13 T. C. 1029, that the principal debt of a bond and accrued interest thereon constitute the security for the purpose of section 112 (b) (3) of the Internal Revenue Code. On this

issue the Court was affirmed in *Commissioner* v. *Carman*, 189 F. 2d 363. The respondent concedes that the *Carman* case, *supra*, holds adversely to his present position, but argues for a reconsideration of his contention. We think the facts in the instant case are indistinguishable from those involved in the *Carman* case, and for the reasons stated in our opinion therein we adhere to that decision. We hold that the respondent erred in increasing the taxable income of the partnership by the amount of $18,612.88, representing interest accrued on the old bonds subsequent to their acquisition.

The second issue presents the question whether the partnership on the settlement of certain sell and buy contracts on a when, as and if issued basis of the new securities of the St. Louis-San Francisco Railway Company realized a net short term capital gain as determined by the respondent, or a long term capital gain and a short term capital loss as contended by the petitioners.

Neither the facts surrounding the transactions nor the amounts involved are in dispute.

On or about May 1, 1945, the Shanis partnership entered into 51 contracts with Montgomery, Scott & Co., its brokers, to sell certain new securities of the St. Louis-San Francisco Railway Company on a when, as and if issued basis. On September 20, 1946, the partnership entered into 9 contracts with the same broker to buy the same number and kind of securities on a when, as and if issued basis. All of such buy and sell when issued contracts were entered into in over-the-counter transactions and are not related to the securities of the St. Louis-San Francisco Railway Company involved in the first issue herein. All the brokers involved in the buy and sell when issued contracts were members of the New York Stock Exchange, the New York Stock Clearing Corporation and the National Association of Securities Dealers.

On January 1, 1947, the National Association of Securities Dealers announced that the securities of the type involved in such when issued contracts would be recognized under the plan of reorganization adopted by the district court and the securities would be issued on January 24, 1947. On that date all of the brokers, who had contracts to buy and to sell the when issued securities in question, had their contracts settled through the medium of the Stock Clearing Corporation.

The petitioners contend that the sell and buy when issued contracts were separate properties and capital assets as defined by section 117 (a) (1) of the Internal Revenue Code; that when such contracts were cleared through the medium of the Stock Clearing Corporation on the settlement date, the net consideration received by the partnership represented the payment for the sale and exchange of the con-

tract rights under the valuable sell contracts and the assumption or release of the partnership liability under its buy contracts; and, since the sell contracts were held for more than 6 months, the gain realized was a long term capital gain, and as the buy contracts were held less than 6 months the loss realized was a short term capital loss.

The respondent's contention is that the partnership sold and exchanged the securities specified in its buy and sell when issued contracts and not its contract rights. It is the respondent's position that when the partnership entered into the sell contracts of when issued securities it was obligated to deliver such securities, and when it entered into the buy contracts it was obligated to receive such securities. It is then argued that as the partnership's sell and buy contracts involved the identical kind and quantity of securities there was an offsetting of the respective contracts on the settlement date, pursuant to the rules and regulations and under the mechanics of the Stock Clearing Corporation, and such offset is in legal effect a delivery. *Board of Trade* v. *Christie Grain & Stock Co.*, 198 U. S. 236. From such premise the respondent concludes that on the settlement date the partnership impliedly received the securities under its buy contracts and impliedly delivered them on the same date under its sell contracts, resulting in a short term capital transaction.

Conceding that buy and sell contracts of when issued securities are capital assets (*Lewis K. Walker*, 35 B. T. A. 640), and that such "contract rights" may be assigned and transferred either separately or together, resulting in a long or short term capital transaction depending upon the holding period of the respective contract, we are convinced that, under the facts here presented, no sale and exchange of contract rights was effected. Where buy and sell contracts of when issued securities are not sold or exchanged prior to their maturity but are retained until the settlement date and cleared through the Stock Clearing Corporation, in our opinion, there is a sale and exchange of the securities involved on the settlement date and a short term capital transaction follows as a consequence.

The respondent's position with respect to the treatment for tax purposes of gains and losses arising out of when issued transactions is set forth in I. T. 3721, 1945 C. B. 164, *et seq.* Many illustrative questions and answers on when issued transactions are contained therein. Question (g) involves assumed facts comparable to those in the instant case.[1]

---

[1] I. T. 3721, 1945 C. B. 164, 174:

Question (g) : B enters into a contract with A under which B agrees to purchase from A 200 shares of Y Company preferred stock "when issued" at 20. More than six months later, B enters into a contract with C under which B agrees to sell to C 200 shares of Y company preferred stock "when issued" at 25. The plan of reorganization is consummated, and preferred stock of the Y Company is issued. The New York Stock Exchange calls for a clearance and A, B, and C report their contracts to the exchange. B neither

In *Raymond B. Haynes*, 17 T. C. 772, which involved capital gains and losses in buy and sell contracts for securities on a when, as and if issued basis, we referred to I. T. 3721, *supra*, with approval. We there found as ultimate facts:

&ast; &ast; &ast; No actual sale or purchase is effected under a "when issued" contract until the new securities are issued.
&ast; &ast; &ast; No actual sale of securities sold under such contracts takes place until this settlement date.

In the course of our opinion we said in footnote 2:

&ast; &ast; &ast; And since the securities attributable to the partnership's "when issued" purchase contracts cannot be treated as acquired prior to the settlement date (cf. *Lewis Walker*, 35 B. T. A. 640, 644–645; I. T. 3721, 1945 C. B. 164), their holding period began on the very date of sale.

Since I. T. 3721, *supra*, here pertinent has been approved by us in *Raymond B. Haynes*, *supra*, we sustain the respondent's contention on this issue, and hold that the Shanis partnership on the sale and purchase contracts of when issued securities of the St. Louis-San Francisco Railway Company realized a net short term capital gain in the taxable year 1947.

In view of the dispositions we have made of this issue, we find it unnecessary to discuss the alternative contentions advanced by the respective parties on brief.

*Decisions will be entered under Rule 50.*

---

receives nor delivers any stock but does receive $1,000 from the Stock Clearing Corporation. Is B's gain a long-term or a short-term capital gain?
Answer: B realized a short-term capital gain of $1,000. The transactions, in effect, have been completed through the New York Stock Exchange, and no further acquisition or disposition of the new stock will be made under the contracts in so far as B is concerned.